UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Deborah Barclay, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:06cv276 (JBA) |
| | : | |
| Paula Hughes, | : | |
|     Defendant. | : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. # 7]
AND MOTION FOR DEFAULT [DOC. # 17]**

Plaintiff Deborah Barclay, a former nurse at Connecticut Valley Hospital, brought this action against one of her former supervisors, Paula Hughes, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., 42 U.S.C. § 1983, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, et seq., claiming unlawful discrimination as well as retaliation in violation of the First Amendment of the Constitution.  Complaint [Doc. # 1].  Plaintiff filed a similar case against Connecticut Valley Hospital, defendant Hughes, and another of plaintiff's supervisors, Kim Michalsky in 2004, see 04cv1322 (JBA), and only initiated this action due to a personal service failure in the earlier action as to defendant Hughes.  Id. ¶ 1.  The Court refers to the description of the factual background underpinning this action detailed in its ruling in the 04cv1322 case.  See Barclay v. Michalsky, 04cv1322 (JBA), -- F. Supp. 2d --, 2006 WL 2616302 (D. Conn. Sept. 12, 2006).

1

Defendant now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), and (b)(6),[1] claiming lack of subject matter jurisdiction under Title VII, lack of personal jurisdiction over Hughes, and failure to state a CFEPA claim for relief as a matter of law in that Hughes cannot be held liable under Conn. Gen. Stat. § 46a-60(a)(1) because she was not plaintiff's employer. See Def. Mot. [Doc. # 7].  Plaintiff concedes that "[t]he defendant is correct that [the Title VII and CFEPA claims] are not claims that can be brought against an individual" and therefore "[t]he Title VII and CFEPA claims are abandoned as to Ms. Hughes."  Pl. Opp. [Doc. # 12] at 2.  Thus, the only remaining claim is plaintiff's § 1983 claim of First Amendment retaliation and defendant's contention that this Court lacks personal jurisdiction over Hughes to adjudicate this claim.[2]  For the reasons that follow, defendant's motion as to this claim will be denied.

## I.    Standard

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of

---

[1] Although defendant's motion is styled as one pursuant to Rule 12(b)(1) and 12(b)(6) only, because it also claims lack of personal jurisdiction, the Court construes the motion as one pursuant to Rule 12(b)(2) as well.

[2] Defendant also moved for default for failure to post security for costs [Doc. # 17], but inasmuch as security for costs was posted in the form of a bond on August 2006, this motion will be denied as moot.

establishing that the court has jurisdiction over the

defendants."  <u>Bank Brussels Lambert v. Fiddler Gonzalez &</u>

<u>Rodriquez</u>, 171 F.3d 779, 784 (2d Cir. 1999).  "Prior to

discovery, a plaintiff may defeat a motion to dismiss based on

legally sufficient allegations of jurisdiction."  <u>Metro. Life</u>

<u>Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir.

1996).  As with any motion to dismiss, "[w]e construe the

pleadings and [any] affidavits in the light most favorable to

[the plaintiff], resolving all doubts in [her] favor."  <u>DiStefano</u>

<u>v. Carozzi N. Am., Inc.</u>, 286 F.3d 81, 84 (2d Cir. 2001) (internal

citations omitted).

    "[I]n resolving questions of personal jurisdiction in a

diversity action, a district court must conduct a two-part

inquiry.  First, it must determine whether the plaintiff has

shown that the defendant is amenable to service of process under

the forum state's laws;[3] and second, it must assess whether the

Court's assertion of jurisdiction under these laws comports with

the requirements of due process."  <u>Metro. Life. Ins.</u>, 84 F.3d at

567.  The applicable long-arm statute is Conn. Gen. Stat. § 52-

---

    [3] Although this is a federal question case, brought pursuant
to 42 U.S.C. § 1983, and thus the Court first looks to the
federal statute to see whether it provides for national service
of process, <u>see</u> <u>PDK Labs., Inc. v. Friedlander</u>, 103 F.3d 1105,
1108 (2d Cir. 1997), because Section 1983 does not so provide,
the Court applies Connecticut's long-arm statutes to determine
whether sufficient basis exists for exercising personal
jurisdiction over defendant, <u>see</u> <u>Sunward Elecs., Inc. v.</u>
<u>McDonald</u>, 362 F.3d 17, 22 (2d Cir. 2004).

59b(a)(2), which provides that "a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: . . . commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act . . . "

"If jurisdiction is appropriate under [this statute], the [C]ourt must then decide whether exercise of jurisdiction comports with due process."  Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990) (internal citation omitted).  The due process analysis has two steps: minimum contacts and reasonableness.  The "minimum contacts" analysis, testing whether a defendant's contacts with a forum are such that the defendant "should reasonably anticipate being haled into court there," see World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980), differentiates between specific and general jurisdiction.  "Specific jurisdiction exists where the suit arises from the defendant's contacts with the forum. . . . Unlike general jurisdiction, where the plaintiff has a more stringent burden of proving 'continuous and systematic contacts' with the forum, no such burden is required in cases of specific jurisdiction."  Broadcast Marketing Int'l, Ltd. v. Prosource Sales & Marketing, Inc., 345 F. Supp. 2d 1053, 1060 n.7 (D. Conn. 2004).  The "reasonableness" analysis considers:

> 1) the burden that the exercise of jurisdiction will
> impose on the defendant; 2) the interests of the forum

state in adjudicating the case; 3) the plaintiff's
interest in obtaining convenient and effective relief;
4) the interstate judicial system's interest in
obtaining the most efficient resolution of the
controversy; and 5) the shared interest of the states
in furthering substantive social policies.

Id. at 1063 (citing Metro. Life Ins., 84 F.3d at 568; Asahi Metal

Indus. Co. v. Super. Ct. Cal., 480 U.S. 102, 113-14 (1987)).

## II.  Discussion

As noted above, the relevant long-arm statute is Conn. Gen.

Stat. § 52-59b(a)(2), which provides, in relevant part, that "a

court may exercise personal jurisdiction over any nonresident

individual . . . who in person or through an agent: . . . commits

a tortious act within the state, except as to a cause of action

for defamation of character arising from the act."  Defendant

claims that "this action does not fall within any of the

situations enumerated in Connecticut's long arm statute.  The

plaintiff does not allege that the defendant Hughes transacts any

business within this state nor does she allege the defendant

committed a tortuous [sic] act within this state.  Rather, the

plaintiff only brings statutory causes of action against the

individual defendant, who admittedly was not her employer."  Def.

Mem. [Doc. # 7-2] at 7.  Plaintiff, by contrast, contends that

"[t]he complaint satisfies the requirements of the Connecticut

long-arm statute in that it alleges that while a resident of this

state and employed within this state, the [defendant] committed a

tortious act within the state, to wit: the constitutional tort of

violating the plaintiff's First Amendment rights.  Connecticut
General Statutes Section 52-59b(1) and (2) applies squarely to
the facts of this case.  The defendant worked in the state and
committed the tort complained of within the state."  Pl. Opp. at
3.

    Defendant does not dispute the due process arm of the
personal jurisdiction analysis,[4] and thus the only issue appears
to be whether the § 1983 violation alleged by plaintiff is
sufficient to satisfy the "tortious act" subsection of
Connecticut's long-arm statute.  Black's Law Dictionary defines
"tort" as "[a] civil wrong for which a remedy may be obtained,
usu. in the form of damages," and includes "constitutional tort,"
which is defines as "[a] violation of one's constitutional rights
by a government officer, redressable by a civil action filed
directly against the officer.  A constitutional tort committed
under color of state law . . . is actionable under 42 USCA §
1983."  Black's Law Dictionary (7th ed.) (Bryan A. Garner, ed.).
Defendant cites no authority for the proposition that a
constitutional tort, such as the alleged § 1983 violation, does
not constitute a "tort" within the meaning of Conn. Gen. Stat. §
52-59b(2) and the Court has found none.  Indeed, the Court has

---

    [4] Defendant would be hard-pressed to dispute minimum
contacts with Connecticut, where she both lived and worked, and
plaintiff's claim arises out of defendant's alleged conduct in
Connecticut.  As such, defendant could certainly anticipate being
haled into court here.

found other cases from within this Circuit where it is assumed,
without discussion, that a § 1983 or other federal statutory
violation constitutes a tort for purposes of a state's long-arm
statute.  See Davis v. United States, 03civ1800 (NRB), 2004 WL
324880, at *5 (S.D.N.Y. Feb. 19, 2004) (court could exercise
personal jurisdiction over defendant pursuant to New York long-
arm statute for committing a tortious act within the state where
defendant was sued pursuant to § 1983 for alleged false arrest in
New York); Elmaghraby v. Ashcroft, 04cv1409 (JG) (SMG), 2005 WL
2375202, at *9-10 (E.D.N.Y. Sept. 27, 2005) (court had personal
jurisdiction over defendants in plaintiffs' Bivens action
pursuant to New York long-arm statute on basis of committing a
tortious act within the state where plaintiffs alleged
constitutional violations as well as other federal statutory
violations, noting that defendants' alleged personal involvement
in New York, "in the creation or implementation of
unconstitutional policies that were directed at the post-
September 11 detainees" was sufficient to satisfy the long-arm
statute).

        Accordingly, as plaintiff has alleged a § 1983 violation
committed by defendant in Connecticut, defendant's motion to
dismiss this claim on personal jurisdiction grounds must be
denied.

## III. Conclusion

For the foregoing reasons, defendant's Motion to Dismiss [Doc. # 7] is GRANTED as to plaintiff's Title VII and CFEPA claims and DENIED as to plaintiff's § 1983 claim.  As noted above, <u>supra</u> note 2, defendant's Motion for Default for Failure to Post Security for Costs [Doc. # 17] is DENIED as moot.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut this 27th day of November, 2006.**